IN THE OREGON TAX COURT
REGULAR DIVISION

Michael S. LINDER
and RaNea S. Linder,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*
*and*

Brenda J. LINDER,
*Intervenor-Defendant.*

(TC 4603)

Michael S. Linder and RaNea S. Linder, Plaintiffs (taxpayers) filed the motion for summary judgment and argued the cause *pro se*.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, filed the motion for summary judgment and argued the cause for Defendant (the department).

James D. Berrien, Hillsboro, filed the motion for summary judgment and argued the cause for Intervenor-Defendant (Brenda Linder).

Decision for Defendant and Intervenor-Defendant rendered September 1, 2004.

**HENRY C. BREITHAUPT, Judge.**

## I.  INTRODUCTION

Plaintiffs Michael and RaNea Linder (taxpayers) appeal from a Decision of the Magistrate Division. The magistrate held that for tax years 1998, 1999, and 2000 taxpayers are not allowed to claim payments of $800 monthly as an allowable deduction for alimony[1] paid to Brenda Linder, the former wife of Michael Linder.

## II.  FACTS

This case is before the court on a stipulation of facts by the parties. Brenda and Michael Linder divorced in 1998, sharing joint custody of their three daughters: Megan, born January 19, 1981; Kathryn, born December 30, 1983; and Sarah, born April 16, 1989. In the Judgment/Decree of Dissolution of Marriage (the decree) signed on March 20, 1998, Circuit Court Judge John Lewis awarded Brenda Linder $1,033.01 per month in child support and $2,300 per month

---

[1] In Oregon, the term used is "spousal support." Both terms are used interchangeably in this Order.

in spousal support. The child support was to continue until each child reached 18 or, as long as the child was attending school and had not married, been emancipated, or died, until the age of 21. The spousal support was to be reduced to $1,500 on February 1, 2002, and reduced again to $1,000 permanent spousal support on May 1, 2007.

In awarding spousal support, the court found that Brenda Linder had no earning capacity beyond minimum wage, that she was undertaking a three- to four-year training program to become a dental hygienist, and that she suffered from a condition that had disabled her mother and prevented her mother from working. Additionally, the court found that even if Brenda Linder was successful in becoming a dental hygienist, she would not be able to approach her previous standard of living.

On taxpayers' 1998, 1999, and 2000 personal income tax returns, $21,600 was deducted each year for spousal support ($1,800 x 12). That deduction reflected $1,800 per month in spousal support, not the $2,300 ordered by Judge Lewis. Taxpayers considered $500 per month of the spousal support to be nondeductible child support, for tax purposes. The Department of Revenue (the department) determined that all but $1,000 of the payments denominated as spousal support in the decree was nondeductible child support for tax purposes and sent Notices of Deficiency dated June 27, 2001, to taxpayers. Taxpayers paid the deficiency in full and appealed to the Magistrate Division of this court. The magistrate agreed with the department's determination that only $1,000 of the monthly payments was deductible as spousal support.

Taxpayers then appealed to the Regular Division, arguing that although the reduction in spousal support from $2,300 to $1,500 per month occurred very near the birthdays of Megan and Kathryn, that fact was coincidental and the reduction was not associated with those children's birthdays. The department asked this court to uphold its determination because the timing of the reduction triggered a presumption that the payments were child support and taxpayers did not rebut that presumption. Brenda Linder, whose income tax

liability would be increased if payments were treated as alimony for tax purposes, joined the department's argument and also asked that the assessments be upheld.

### III. ISSUE

What is the proper deduction for spousal support?

### IV. ANALYSIS

██  The Oregon legislature has expressed the intent "to make the Oregon personal income tax law identical in effect to the provisions of the federal Internal Revenue Code relating to the measurement of taxable income of individuals." ORS 316.007.[2] Therefore, the court looks to federal law to analyze the support payments at issue in this case. Alimony payments, as defined in Internal Revenue Code (IRC) section 71(b),[3] are includible in the gross income of the recipient and are deductible by the payor. IRC §§ 71(a), 215. In contrast, IRC section 71(c) states that child support payments are not taxable to the recipient and identifies situations in which payments that otherwise would have qualified as alimony are to be treated as child support, for tax purposes. Any payment not taxable to the recipient would be nondeductible for the payor.

To determine the nature of each portion of the payments in question, it is useful to look at the spousal support scheme outlined in the decree. The decree stated, in part:

"The Court finds that Petitioner's basic needs and her additional need for assistance in acquiring an education are in the amount of approximately $2,300.00 per month for five years, the Court being cognizant of the fact that at the completion of a five year period the eldest child will have attained the age of 21 years, and the second eldest will have attained the age of 18 years.

"Having in mind the above, the Court therefore orders a contribution from Respondent to Petitioner as spousal support in the amount of $2,300.00 per month."[4]

---

[2] All references to the Oregon Revised Statutes (ORS) are to 1997. The statute did not change in 1999.

[3] All references to the IRC are to 1998.

[4] In his memorandum letter of November 10, 1997, Judge Lewis states, in part:

In accordance with the provisions of the decree, the first reduction of $800 occurred in February 2002 when Michael Linder's eldest two daughters reached ages 21 and 18. Megan and Kathryn happen to have birthdays within a few weeks of each other; the first reduction occurred close to their birthdays. The second reduction of $500 will occur in May 2007, two weeks after the youngest daughter, Sarah, reaches 18. The remaining $1,000 of support will continue permanently "based upon the Court's conclusion of [Brenda Linder's] unproven ability to support herself and her further medical condition." The parties agree that the second reduction of $500 represents child support and that the permanent portion of the payment ($1,000) represents alimony.[5] The only issue before the court is whether the first reduction ($800), although labeled as spousal support by the decree, is actually child support under IRC section 71(c).

■    According to the terms of IRC section 71(c), payments will not be considered spousal support if they are for the support of the children of the payor spouse. Here Judge Lewis described the entire amount of the $2,300 as "spousal support." However, the inquiry does not end there. Although designated as spousal support, this court looks at the substance of the payments, not merely their form. IRC section 71(c)(2) identifies two situations in which a payment that

---

"I am awarding spousal support to Wife to me[e]t her basic needs and to help with her school in the amount of $2,300.00 per month for five (5) years to allow her to get through school and for the first child to reach 21 and the second child 18. At that time support will drop to $1,500.00 per month until the last child reaches 18 (approximately 6 more years) and then to $1,000.00 per month permanently * * *."

Although the term "five years" appears here as well as in the decree, that time period never, in fact, affects the payment amounts. As discussed below, the judge adjusted payment amounts based upon the dates of the second and third daughters' eighteenth birthdays.

[5] Although the decree does not explicitly state that the alimony payments will terminate upon the death of the payee spouse, as required by IRC section 71(b)(1)(D), no party has raised that as an issue. The court notes, however, that there is disagreement as to how this should be dealt with under Oregon law. *See Kemp v. Dept. of Rev.*, TC-RD No 4241, WL 477958 (July 27, 1998) (unpublished opinion holding that under Oregon law spousal support is deemed to terminate upon death of payee spouse absent a provision in the judgment providing otherwise). *But see Fithian v. United States*, 45 Fed Appx 700, 2002-2 US Tax Cas ¶ 50,629 (9th Cir 2002) (unpublished opinion holding that Oregon law does not clearly impose a termination condition on spousal support when the decree is silent).

would otherwise qualify as alimony under IRC section 71(b) is not to be treated as alimony.

■ IRC section 71(c)(2)(A) provides that if the divorce or separation instrument specifies a reduction is to occur at a time relating to a child, such as when the child reaches a certain age, the amount of the reduction will be treated as nondeductible child support. Judge Lewis ordered the payments to be reduced at certain times because he was "cognizant of the fact" that at those times Megan would be 21 and Kathryn would be 18. That language indicates that, for purposes of IRC section 71(c)(2)(A), the first reduction very likely depended on a contingency relating to those children—that is, their twenty-first and eighteenth birthdays.[6]

■ IRC section 71(c)(2)(B) provides the second exception that excludes from the definition of alimony a payment that would otherwise have been treated as alimony. Subparagraph (B) states that if the divorce or separation instrument specifies a reduction is to occur "at a time which can *clearly be associated* with a contingency of a kind specified in subparagraph (A)," the amount of the reduction will be treated as nondeductible child support. (Emphasis added.) A temporary treasury regulation provides guidance as to when an event is one that can "clearly be associated" with a contingency related to a child by identifying two such situations. Temp Treas Reg § 1.71-1T(c) (Aug 31, 1984) (Q&A-18).

The first situation arises "where the payments are to be reduced not more than 6 months before or after the date the child is to attain the age of 18, 21, or local age of majority." *Id.* In the case at hand, the first situation is applicable because Kathryn's eighteenth birthday was December 30, 2001, just one month before the February 1, 2002 reduction from $2,300 to $1,500. That reduction date is also within two weeks of Megan's twenty-first birthday, on January 19, 2002.

---

[6] It is not clear whether IRC section 71(c)(2)(A) applies under these facts because the reduction is not *stated* as occurring on a birthday. However, the court notes that Judge Lewis had a colloquy with the attorneys regarding whether reductions were to occur after four years, five years, or specific dates relating to the daughters reaching certain ages. The colloquy, discussed later in this opinion, indicates that the judge connected the reductions to birthday periods, if not exact dates. That methodology could be said to satisfy this section of the regulation as well. Because of other grounds for decision, the court need not rely on that analysis.

The second situation arises:

> "where the payments are to be reduced on two or more occasions which occur not more than one year before or after a different child of the payor spouse attains a certain age between the ages of 18 and 24, inclusive. The certain age referred to in the preceding sentence must be the same for each such child, but need not be a whole number of years."

*Id.* Again, the situation is applicable. There are two reductions that occur within one month of the date two different children of the payor spouse reach the age of 18. The first reduction occurs on February 1, 2002, within one month of Kathryn's eighteenth birthday on December 30, 2001. The second reduction occurs on May 1, 2007, within two weeks of Sarah's eighteenth birthday on April 16, 2007. Thus, the presumption of nondeductible child support arises in the case at hand under both situations described in Q&A-18 of the Temporary Treasury Regulations.

■      Once the presumption that the payment is child support has arisen, taxpayers lose their appeal *unless* they are able to rebut that presumption. That must be done by showing that the time was chosen independently of any contingencies related to the children. While Michael Linder claimed at oral argument that it was a coincidence that the reductions were so close to his daughters' birthdays, the facts do not support his claim. These dates were fixed to coincide with his daughters' birthdays through efforts of taxpayers' own attorney, Scott Morrill (Morrill), and, presumably, at taxpayers' request. Morrill first wrote to Brenda Linder's attorney on January 14, 1998, to clarify the issue:

> "We believe that the judge's intention for spousal support was that the initial amount should be paid on a monthly basis until Megan turns 21 and Katy turns 18. This would occur on 1/19/2002, four years from now. After that time, the first stepdown amount should be paid only until Sarah turns 18, and not for any period of time after that."

Apparently that letter was not agreed upon by both parties. There followed a letter to Judge Lewis from Morrill on February 13, 1998, which addressed questions to the judge based on his memorandum decision. It states:

"Your Memorandum states that the initial spousal support amount of $2,300 per month should continue for five years, until the eldest daughter turns 21 and the middle daughter turns 18. The oldest daughter turns 21 in January of 2002, which is four years. Your Memorandum states that it should be approximately five years.

*"Question*—Does the step-down date take effect February of 2002 or January of 2003?

"Your Memorandum then calls for a second step-down to occur after the youngest daughter turns 18. You characterize this to be approximately six additional years. The youngest daughter, Sarah, turns 18 on April 16, 2007.

*"Question*—Does the second step-down happen effective May 1, 2007?

"These issues are addressed in Mr. Minson's proposed Judgment * * *. Mr. Linder would prefer the Judgment to reflect specific dates rather than number of years. He proposes the first stepdown to occur effective February 1, 2002, and the second to occur effective May 1, 2007."

The decree reflects the judge's responses to those points and sets reduction dates at February 1, 2002, and May 1, 2007.

■      Taxpayers argue in their Motion For Summary Judgment that the rationale used by Judge Lewis for the reductions was based upon Brenda Linder's schooling, which would end in three or four years. The court agrees that Judge Lewis did consider Brenda Linder's schooling when he set the reductions; however, the presumption is not rebutted simply because the judge considered something more than just the children's ages when setting the reductions. For the presumption to be rebutted, milestone birthdays must not have been considered at all. In *Hill v. Commissioner*, for example, the presumption was successfully rebutted when the payor spouse showed that it was a coincidence that the date chosen to eliminate alimony was within six months of his daughter Christina's eighteenth birthday. 71 TCM (CCH) 2759 (1996). Those parties had chosen the date from among a number of dates, depending on contingencies such as remarriage of the payee spouse and with which parent Christina chose to live. The court stated that the payor spouse had rebutted the presumption "by showing that the parties chose January 31,

1992, as part of eliminating a financial impediment to petitioner's remarriage and that it is purely coincidental that January 31, 1992, is within 6 months of Christina's eighteenth birthday." *Id.* at 2763. The facts in *Hill* are dissimilar to those in this case and lead to the opposite conclusion—that the payments were alimony, not child support. In *Hill*, the payee spouse sought to alter the dates alimony would terminate so that she could remarry; her daughter's birthday was never mentioned or hinted at in any of the evidence before the court. Here, Judge Lewis specifically noted those milestone birth dates when setting the dates on which alimony would be reduced.

For the presumption to be rebutted under the facts of the case at hand, it would have to be shown that Judge Lewis did not consider the children's ages at all when setting the reductions. As the facts show, that simply was not the case. He clearly did connect the reductions to the girls' ages. And, taxpayers can hardly complain when, as Morrill's letter indicates, it was Michael Linder himself who requested that the dates be connected with his daughters' birthdays.

When Judge Lewis originally wrote his memorandum opinion several months before the decree was entered, the older girls would have turned 21 and 18 in five years. As the dissolution proceedings continued, those birth dates were four rather than five years distant. Taxpayer then requested and was given firm dates that coincided with his daughters' birthdays because he wanted to be sure his child support would be reduced at a time when his daughters reached an age when they would likely leave the home, presumably for college. The court views this as strong evidence that the reductions depended upon the girls reaching a certain age.

Further support comes from the second reduction, which occurs when the youngest daughter reaches 18. On this issue the decree provided that after the reduction to $1,500 per month on February 1, 2002, support would again be decreased on May 1, 2007, just two weeks after Sarah turns 18 on April 16, 2007. Taxpayers do not contest that this second reduction is child support and, in fact, did not deduct

it as alimony. The court is at a loss to understand how taxpayers can concede that the second reduction is child support, but at the same time argue that the first is not child support.

At oral argument Michael Linder claimed those dates were chosen "because they just made sense to me." He went on to explain that the dates made sense because those dates "represented the completion of scenarios discussed by Judge Lewis in his memorandum, that being a period of time for Brenda to complete school *and the ages of the children.*" By his own admission, the dates were chosen at least in part based upon the ages of the children.

If Brenda Linder had been expected to graduate in January 2002 when the first reduction was to occur, this would be a closer case. However, when all parties so clearly had the birthdays of the children in mind for both reductions, the court must find the first reduction was to occur at a time that can be clearly associated with the happening of a contingency related to a child and that taxpayers failed to rebut the presumption that the amount of the reduction was child support. Therefore, the court finds that the $800 per month reflected in the first reduction was properly characterized as child support, for tax purposes.

Taxpayers state that Oregon law provides that child support orders are established by a state formula that is presumed to be correct. Taxpayers are not in error. However, the department did not determine that the court-ordered child support amount was incorrect. It determined that some of the spousal support was in fact additional child support, for tax purposes.

Taxpayers extensively discuss Engel's Law, an economic theory, in support of their case. As this theory was not before Judge Lewis, this court will not consider it. Even if it did, it would bear little weight, if any, when measured against the legal standards applicable to this case.

## V.  CONCLUSION

For the reasons stated above, taxpayers' appeal is denied and the department's assessment is sustained. It is

the finding of the court that the portion of the monthly payments at issue in this case is child support. Now, therefore,

IT IS ORDERED that the Department of Revenue's Motion For Summary Judgment is granted; and

IT IS FURTHER ORDERED that Intervenor-Defendant's Motion For Summary Judgment is granted; and

IT IS FURTHER ORDERED that Plaintiffs' Motion For Summary Judgment is denied; and

IT IS FURTHER ORDERED that Defendant and Intervenor-Defendant are awarded their reasonable costs.